**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

SYDNI DONNELL FRAZIER,

    Plaintiff,

    v.

MELLISSA LI,
STERLING JOHNSON,

    Defendants.

Civil Action No.:  ELH-21-1111

**MEMORANDUM OPINION**

Sydni Donnell Frazier is a self-represented federal prisoner currently incarcerated at Chesapeake Detention Facility ("CDF") in Baltimore.  In an Amended Complaint (ECF 5), he has sued Deputy United States Marshal ("DUSM") Melissa Lin and DUSM Sterling Johnson, alleging various constitutional violations.[1]  The Court shall construe the allegations as a *Bivens* claim.  *See Bivens v. Six Unknown Named Agents of Bureau of Narcotics*, 403 U.S. 388 (1971).

Defendants have moved to dismiss or to transfer venue or, in the alternative, for summary judgment (ECF 18), supported by a memorandum of law (ECF 18-1) (collectively, the "Motion").  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), plaintiff was informed that his failure to file a response in opposition to the Motion could result in dismissal of the suit.  ECF 19.  To date, plaintiff has not responded.

No hearing is necessary to resolve the motion.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, I shall construe the Motion as one for summary judgment and grant it.

---

[1] The Clerk shall be directed to amend the docket to reflect the correct spelling of defendants' names.

# I.     Factual Background

### A.  Underlying Case

In case CCB-16-0267, plaintiff was one of numerous defendants.  He was charged with multiple offenses.  *See* ECF 515 (Second Superseding Indictment).  Frazier was tried by a jury and convicted on March 6, 2020, of conspiracy to distribute 100 grams or more of heroin; possession of a firearm in furtherance of a drug trafficking crime, resulting in death; possession of a firearm by a felon; and possession with intent to distribute heroin and fentanyl.  *Id.*, ECF 1453.  A flurry of post-trial events occurred.  On June 1, 2022, Judge Catherine Blake sentenced plaintiff to a term of life imprisonment plus 60 months, dating to January 25, 2017.  *Id.,* ECF 1764.[2]

### B.  Plaintiff's Complaint

Plaintiff's Amended Complaint outlines several incidents which occurred while he was a federal detainee or prisoner at Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia, awaiting disposition of his criminal case.  Frazier states that the United States Marshal Service ("USMS") is responsible for transferring and redesignating federal inmates.  ECF 5 at 5.

Plaintiff asserts that on February 2, 2021, he was placed in administrative segregation, where he was not allowed to shower until February 10, when he was escorted by Corporals Taylor, King, and Q. Williams.  *Id.* at 3.  That day he was also denied his one hour of recreation time and was taken back to his cell immediately after his shower.  *Id.*  Plaintiff states that his attorney, Christopher Davis, reported the issue via email to DUSM Johnson and to the staff at NNRJ.  *Id.*

Further, plaintiff alleges that DUSMs Johnson and Lin denied Attorney Davis's requests to have plaintiff transferred to a federal detention center following several incidents with Officer Schaefer.  ECF 5 at 3.  He states that on March 27, 2021, Officer Schaefer used racial and sexual

---

[2] The case was recently reassigned to Judge Lydia Griggsby.

slurs while verbally harassing plaintiff and lodged disciplinary charges against plaintiff.  *Id.*
Attorney Davis relayed the incident to USMS, to which DUSM Lin replied that plaintiff would
stay housed at NNRJ "until he is designated." *Id.* at 3-4.

In another incident on May 2, 2021, Sgt. Davis and COs Taylor, Thorne, King, Hall,
Stanley, and Q. Williams took plaintiff's property after physically assaulting him.  ECF 5 at 4.
EMT Nurse Bermudez documented injuries to plaintiff's wrist, ankles, head, and face.  *Id.*  This
incident was also reported to USMS by plaintiff's attorney.  *Id.*

Moreover, plaintiff complains that on February 22, 2021, his legal mail was opened outside
of his presence and photocopied without any notice or authorization by mailroom staff and Chief
of Security Jonathan B. English.  ECF 5 at 4.  USMS allegedly did not respond to counsel's email
reporting the incident.  *Id.*

In addition, plaintiff claims that on April 22, 2021, USMS was informed that Frazier was
physically assaulted multiple times on April 20, while he was on suicide watch.  ECF 5 at 5.  First,
around 12:30 p.m., Lt. Taylor and Officers Schaefer and Blake removed plaintiff from his cell.
But, instead of taking plaintiff to mental health staff, he was subjected to a strip search by Sgt.
Stropshire.  *Id.*  Later that evening, plaintiff was assaulted by Sgt. Ball and Officers Shepard and
Lawes.  *Id.*  Plaintiff states that upon reporting the incident to DUSM Lin, she replied that plaintiff
had refused orders and was using suicide watch to get around the jail.  *Id.*

C.  Defendants' response

Defendants contend that the Eastern District of Virginia is the appropriate venue for this
civil action because the events giving rise to the claims in plaintiff's Amended Complaint occurred
in Warsaw, Virginia.  ECF 18-1 at 9.  Alternatively, defendants assert that the Amended Complaint

should be dismissed because plaintiff fails to allege any personal participation by defendants.  *Id.* at 10-11.

USMS is "a bureau of the United States Department of Justice responsible for the custody and care of federal in-custody pre-trial  prisoners from the time they are arrested by a marshal or remanded to USMS custody by the court, until they are convicted and delivered to a designated Federal Bureau of Prisons facility or ordered released."  ECF 18-9 (Melissa Lin Decl.), ¶ 2.  USMS is permitted to use the Federal Prisoner Detention Fund to provide for such care and custody in non-federal institutions.  *Id.* at ¶ 3.  USMS contracts with private jail facilities or enters into intergovernmental agreements with state and local facilities to facilitate overnight detention of prisoners. *Id.* at ¶ 4.

For the detention of individuals charged with or awaiting sentencing for federal violations in the District of Maryland, USMS has an intergovernmental agreement with NNRJ.  *Id.* at ¶ 5. Plaintiff was originally held at CDF in Baltimore.  *Id.* at ¶ 6.  However, Frazier was transferred to NNRJ on January 28, 2021, and was returned to CDF on August 4, 2021.  *Id.*

DUSMs Lin and Johnson, the current and former Detention Coordinators for the District of Maryland, attest they were not present at NNRJ for any of the alleged incidents.  Nor do they supervise any of the officers allegedly involved.  ECF 18-9, ¶ 8; ECF 18-10 (Johnson Decl.), ¶ 7. Plaintiff has not contested their assertions.

The extent of DUSM Johnson's interaction with plaintiff's counsel was limited.  Johnson attaches to his Declaration an email of April 13, 2021, from Attorney Davis, which he forwarded to DUSM Lin.  There, Frazier's defense counsel requested his transfer to CDF due to "irreconcilable differences" with the NNRJ staff.  ECF 18-10 at 6-7.  Lin informed Davis that transfers cannot be completed because prisoners dislike staff and plaintiff would be moved to a

Bureau of Prisons facility once he was designated. ECF 18-9 at 16. Davis conceded that plaintiff had problems at CDF as well and was just "dotting the i's and crossing the t's." *Id.*

DUSM Lin avers that she was contacted by plaintiff's counsel, Davis, seeking information regarding plaintiff's complaints about NNRJ. ECF 18-9, ¶ 9. On April 26, 2021, Davis reported to Lin that he was informed by plaintiff's girlfriend that plaintiff had been beaten by the guards, stripped of his clothes, and placed on suicide watch. *Id.* at 15. Lin responded the following day: plaintiff was placed in administrative segregation due to his behavior and, because he told an officer that he was feeling suicidal, he was placed on suicide watch, where it is policy that detainees are stripped of property that could be used to harm themselves, including their clothes. *Id.* at 14. NNRJ staff indicated to Lin that plaintiff had been alleging that he was suicidal as a means to move to different units within the jail. *Id.* Plaintiff refused to comply with the strip search and force was used to gain compliance. *Id.* Lin advised that transferring plaintiff was unlikely to improve plaintiff's behavior, to which Davis agreed. *Id.*

The emails exchanged between Lin and Davis show her response to the various issues raised by counsel on behalf of plaintiff. *Id.* at 6-67. A conversation initiated on July 22, 2021, concerns plaintiff's need for medical assistance. *Id.* at 61, 64. Lin contacted the facility immediately to inquire about the situation. *Id.* at 61. Davis states in their exchange that plaintiff is "immature" (*id.* at 62) and "a handful to say the least" (*id.* at 63). Lin acknowledged that many detainees do not like NNRJ but responded later that day with a status update about the medical care being provided to plaintiff. *Id.* at 32, 55. Davis's response acknowledged that he "suspected that there was more to the story" than what his client told him and thanked Lin for checking on the plaintiff's care. *Id.* at 46.

A week later, on July 29, 2021, Davis reached out, thanking Lin for her continued attention to the matter and informing her of plaintiff's need for an MRI test. *Id.* at 54. He also requested that plaintiff be transferred to CDF because of his upcoming sentencing and Lin agreed but advised that if he did not do well at CDF the only option would be transfer back to NNRJ. *Id.*

## II.      Legal Standards

### A.  Venue

Proper venue is determined by the general venue statute, 28 U.S.C. § 1391(b), which provides that a civil action may be brought in any judicial district in which (1) any defendant resides, if all defendants are residents of the State in which the district is located or (2) a substantial part of the events or omissions giving rise to the claim occurred, or (3) if there is no district in which an action may otherwise be brought, in any judicial district in which any defendant is subject to the court's personal jurisdiction.

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### B.  Motion to dismiss or for summary judgment

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 18. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450

(4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'"  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).  To adequately raise the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'"  *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly

denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see*

9

*also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008).  Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se."  *Putney*, 656 F. App'x at 638.

Plaintiff has not filed any response in opposition to defendants' motion nor any affidavit under Rule 56(d).  I am satisfied that it is appropriate to address the motion as one for summary judgment, as it will facilitate resolution of the case.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc*., 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).  To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law.  *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc*., 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc*., 888 F.3d at 659; *Sharif v. United Airlines, Inc*., 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex*, 477 U.S. at 322-24.  Notably, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion."  *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).

The court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Ricci*, 557 U.S. at 585-86; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; accord *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). But, "to avoid summary judgment, the non-moving party's evidence must be of sufficient quantity and quality as to establish a genuine issue of material fact for trial. Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; accord *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cty.*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). In the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc*., 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)). But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc*., 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, ___ F. 4th ___, 2022 WL 2901043, at \*9 (4th Cir. July 22, 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

Plaintiff is self-represented. Therefore, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp.*, 477 U.S. at 323-24).

### III. Discussion

Based on plaintiff's allegations, which are liberally construed, plaintiff's suit appears to be filed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *Bivens* is a judicially created remedy designed to vindicate violations of constitutional rights committed by federal actors in their individual capacity. *See Hower v. Stewart*, No. GLR-17-198, 2018 WL 4384150, at \*7 (D. Md. Sept. 14, 2018) (citing *Bivens*, 403 U.S. at 395-97

(1971))).  To state a *Bivens* claim, a plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated his constitutional rights.  *Bivens*, 403 U.S. at 389.  Thus, a plaintiff must sue the named defendants in their individual capacities, rather than their official capacities.  *See Funches v. Wright*, 804 F.2d 677 (4th Cir. 1986) (citing *Butz v. Economou*, 438 U.S. 478 (1978)).

In a *Bivens* action, the plaintiff may seek money damages against a federal agent acting under the color of their authority for injuries caused by their unconstitutional conduct.  But, a plaintiff may not seek damages against the United States or a federal agency.  *See FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)).

In a *Bivens* action, liability only attaches upon personal participation by a defendant in the constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (2001) (finding that there is no respondeat superior liability in a *Bivens* case; liability is based upon each defendant's personal constitutional violations); *see Angelina v. Cumberland FCI Health Servs.*, No. GJH-15-2427, 2017 WL 1025720, at *15 (D. Md. Mar. 15, 2017) (dismissing defendants where no personal participation in the challenged denial of treatment was alleged).  Furthermore, it is well established that the doctrine of respondeat superior does not apply in *Bivens* claims.  *See Trulock*, 275 F.3d at 402.

Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability must

14

be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

The thrust of plaintiff's allegations against Lin and Johnson is that his various complaints regarding his treatment by NNRJ staff were reported to them but they failed to transfer him to a different facility.  However, it is undisputed that neither DUSM Lin nor Johnson was personally involved in any of the misconduct alleged, nor do they have any supervisory power over the NNRJ staff.  At most, the record shows that DUSM Johnson forwarded an email inquiry from plaintiff's counsel to DUSM Lin (*see* ECF 18-10 at 6-7) and DUSM Lin responded to various requests from plaintiff's counsel regarding plaintiff's status at NNJR (*see* ECF 18-9 at 6-67).  Without any evidence of defendants' personal involvement in the alleged constitutional violations, Lin and Johnson are entitled to summary judgment in their favor.

Additionally, even if plaintiff successfully alleged defendants' personal participation in the alleged constitutional violations, plaintiff cannot show that defendants were deliberately indifferent.

The rights of pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment.  *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  In contrast, the Eighth Amendment applies to convicted prisoners.  *See Brown v. Harris*, 240 F.3d at

388 ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)); *see also Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996); *Belcher v. Oliver,* 898 F.2d 32, 34 (4th Cir. 1990); *Hill,* 979 F.2d at 991-92. But, the distinction is immaterial here. This is because both detainees and convicted prisoners are entitled to certain protections. *Bell v. Wolfish,* 441 U.S. 520, 545 (1979); *Williamson v. Stirling,* 912 F.3d 154, 177 (4th Cir. 2018); *see Kingsley v. Hendrickson,* 576 U.S. 389 (2015) (pertaining to excessive force claims); *Mays v. Sprinkle,* 992 F.3d 295, 300-01 & n.4 (4th Cir. 2021) (recognizing circuit split as to application of *Kingsley* in the context of pretrial detainee claim of deliberate indifference as to medical care).

Notably, the Fourth Circuit has determined that the Eighth Amendment's deliberate indifference standard, applicable to convicted prisoners, applies by way of the Fourteenth Amendment to certain claims made by pretrial detainees, including the assertion of inadequate medical care. *Hill,* 979 F.2d at 991-92 ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.") (citations omitted); *see Young,* 238 F.3d at 575 ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."); *Belcher,* 898 F.2d at 34 ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.") (citation omitted). Therefore, I turn to review the Eighth Amendment.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hixson*, 1 F.4th at 302; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017); *see also Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016) ("The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials.") (citing *Farmer*, 511 U.S. at 832). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Raynor*, 817 F.3d at 127.

For a plaintiff to prevail under the Eighth Amendment (or the Fourteenth Amendment), the defendant's actions or inaction must amount to deliberate indifference need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).

17

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind," amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability, however. Where prison officials respond reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)); *see Thompson*, 878 F.3d at 108 ("[P]rison officials are

not liable if taking action would endanger their own lives or if the harm occurred despite their reasonable efforts to prevent it.").

Here, even assuming that plaintiff faced an objective risk of harm based on the misconduct he alleges against NNRJ staff, defendants were not deliberately indifferent. The record shows that DUSM Johnson was no longer the Detention Coordinator for the District of Maryland when Attorney Davis contacted him regarding plaintiff's complaints about NNRJ. And, in any event, Johnson took reasonable action in forwarding Davis's message to DUSM Lin for review.

Similarly, DUSM Lin took reasonable action by investigating and responding to Attorney Davis regarding his various inquiries as to plaintiff's status. The record shows that DUSM Lin on various occasions advised plaintiff's attorney regarding the various behavioral issues plaintiff was having as well as advising of her inability to move plaintiff to CDF on the sole basis that he did not like the NNRJ staff.

Ultimately, in regard to the medical care plaintiff required, he was transferred to CDF. Based on the evidence presented, the Court cannot find that either defendant acted with deliberate indifference.

### IV.     Conclusion

I decline to exercise my discretion to transfer this matter to the Eastern District of Virginia. Although while plaintiff outlines several allegations of constitutional violations by the NNRJ staff, none of them are named defendants in this action. And, as summary judgment will be granted in Lin and Johnson's favor, no defendants remain in this action so as to warrant the transfer. If plaintiff seeks to pursue claims against the NNRJ correctional staff, he may do so by filing a separate complaint in the Eastern District of Virginia. He even acknowledges as much in his

Amended Complaint, stating: "As far as NNRJ staff and administration [they] will be handled separately in a different venue."  ECF 5 at 5.

Thus, for the foregoing reasons, defendants' motion to dismiss or to transfer venue or in the alternative for summary judgment is GRANTED and judgment shall be entered in favor of defendants.

A separate Order follows.


November 18, 2022                                              _____/s/_____
Date                                                                    Ellen L. Hollander
                                                                        United States District Judge